IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LORI SHAMBLIN, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

OBAMA FOR AMERICA,

    Defendant.

Case No. 8:13-cv-2428-T-33TBM

## DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SUPPORTING MEMORANDUM

Pursuant to Rules 12(b)(6) and 12(f), Federal Rules of Civil Procedure, the defendant, Obama for America, moves to strike various allegations of the Plaintiff's Complaint and to dismiss Plaintiff's Complaint and submits this Memorandum in support thereof.

## I. INTRODUCTION

Plaintiff has filed this purported class action for alleged violations of the Telephone Consumer Protection Act ("TCPA") against Obama for America, the campaign organization to re-elect President Barack Obama. Plaintiff alleges that in the fall of 2012, she received two voicemail messages from Defendant on her cell phone and to which she did not consent. (Complt. ¶¶18, 19, 21). Plaintiff alleges that these messages encouraged Plaintiff to vote early for President Obama. (Complt. ¶¶18-19).

Plaintiff is now suing individually and as a class representative on behalf of others who allegedly received such calls. However, Plaintiff's attempt to style this case as a class action

should fail for several reasons. First, the issue of whether or not individuals consented to receive such calls is an individualized inquiry which is not appropriate for a class action. Second, the aggregation of uncapped statutory damages results in exposure that is wholly disproportionate to any alleged harm incurred by individuals who receive a phone message and, therefore, the class action is not a superior method of adjudicating these claims. Third, the disproportionate monetary exposure in the context of political speech raises First Amendment concerns further supporting that this case is not a proper class action. Finally, Plaintiff's class definition is also defective as it constitutes an impermissible "fail-safe" class. Given that these issues are apparent from the face of the pleadings and the well-established nature of TCPA class actions, Plaintiff's class action claims should be dismissed.

## II. ARGUMENT

### A. Legal Standard

In certain circumstances, the court can grant a motion to strike class allegations at the pleading stage, i.e., before discovery or class certification proceedings. "Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification. *Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, 8:12-cv-897-T-30TBM, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012) (citing *MRI Assocs. Of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1207 (M.D. Fla. 2010). *See also, Baker v. Home Depot USA, Inc.*, No. 11-cv-6768, 2013 WL 271666, at *4 (N.D. Ill. Jan. 24, 2013) ("Where pleadings 'are facially defective and definitively establish that a class action cannot be maintained,' the court can properly grant a motion to strike class allegations at the pleading stage. ") (quoting *Wright v. Family Dollar, Inc.*, No. 10-cv-4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010)). Federal Rule of Civil Procedure 23(c)(1)(A) provides that the court, "[a]t an early practicable time…, must determine by order

whether to certify the action as a class action." Rule 23(d)(1)(D) provides that, "[i]n conducting an action under this rule, the court may issue orders that...require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." A motion to strike class allegations falls within the scope of this provision. "District courts, both within this district and others, have held that a motion to strike class allegations, made pursuant to these provisions, is an appropriate device to determine whether the case will proceed as a class action." *Wright*, 2010 WL 4962838 at *1. "[W]hen the defendant advances a legal argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained." *Id.* When deciding a motion to strike class allegations brought by a defendant, courts undergo a standard class certification analysis to determine whether the requirements under Rule 23 are satisfied. See *Baker*, 2013 WL 271666, at *4-6; *Wright*, 2010 WL 4962838 at *2-4. This case is precisely the type of case where a motion to strike class allegations should prevail.

**B.      Requirements for a Class Action**

The District Court has an obligation to decide whether an action is properly brought as a class action. *Vega v. T-Mobile, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citing *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 n. 37 (11th Cir. 2003)). Further, "it is wise for a district court to ascertain early on whether the plaintiff has adequately defined the proposed class such that a full examination of the Rule 23(a) and (b) requirements is even necessary (or, for that matter, even possible)." *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 670 (M.D. Fla. 2010).

In order to be able to sustain a class action, a plaintiff must satisfy all of the requirements of Fed. R. Civ. P. 23(a) and one part of Rule 23(b). Rule 23(a) requires a showing by a plaintiff that (1) the class is so numerous that joinder of all members is impracticable, (2) there are

questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class. If the requirements of Rule 23(a) are satisfied, the Court must also find that Plaintiff has satisfied Rule 23(b)(2) or (b)(3).

In this case, Plaintiff will seek to demonstrate that she has established the requirements under Rule 23(b)(3). (Complt. ¶14).[1] Certification under Rule 23(b)(3) requires Plaintiff to establish that "the questions of law or fact common to members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Kirts v. Green Bullion Financial Services, LLC*, No. 10-20312, 2010 WL 3184382, at *5 (S.D. Fla. Aug. 3, 2010). Here, based on the allegations and the nature of TCPA actions generally, and this case in particular, Plaintiff cannot establish predominance or superiority.

### C. Plaintiff's Proposed Class Definition Requires Individualized Determinations of Consent and Thus Common Issues Do Not Predominate

Class certification is improper where under the class definition, "the number of individualized determinations required to determine class membership becomes too administratively difficult." *Kirts*, 2010 WL 3184382 at *6. (quoting *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003, for the proposition that class certification was denied where "individualized mini-trials would be required even on the limited issue of class membership"). Here, it is clear from the pleadings that the issue of whether a call recipient

---

[1] Plaintiff also claims certification is appropriate under Rule 23(b)(2) on the basis that "Defendant has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief appropriate for the class as a whole." (Complt. ¶15). However, in this case, since Defendant's purpose has already been accomplished, the re-election of President Barack Obama, Defendant Obama for America is winding down and there is nothing to enjoin. Thus, Plaintiff will not be able to satisfy the class action requirements of Rule 23(b)(2).

consented to the call would require an individualized inquiry and thus, this case is not an appropriate class action.

A political call to a cellular phone only constitutes a violation of the TCPA if the call was made using an automatic telephone dialing system or used an artificial or pre-recorded voice ***and the party called did not provide prior express consent.*** 47 U.S.C. §227(b)(1)(A)(iii). (emphasis added). While the term "express consent" is not defined under the TCPA, during the relevant time period, the regulations promulgated by the FCC and then in effect provided:

> [P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd 8752, 8769 (1992). In 2008, the FCC reaffirmed its position that a person who releases his/her phone number has offered "express consent' under the TCPA, adding that "[t]he legislative history in the TCPA provides support for this interpretation." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 564 (2008).

Under the regulations promulgated by the FCC, political calls to residential landlines do not require prior express consent, yet prior express consent is required for such calls to cell phones.[2] However, the consent to receive political calls to wireless numbers is not required to be in writing and can be provided orally. With respect to TCPA claims, consent is an affirmative

---

[2] Given that nearly 36% of households are now wireless only, the distinction between such calls to "residential landlines" and cellular numbers is outmoded. *See* http://www.ctia.org/advocacy/research/index.cfm/aid/10323 (35.8% of households are "wireless only" as of June 2012 according to the survey done by the National Center for Health Statistics, part of the CDC-Center for Disease Control and Prevention, Department of Health and Human Services).

LEGAL28542791.1

defense to be established by the Defendant. *Shea v. BBVA Compass Bancshares, Inc.*, 12-23324 KMM, 2013 WL 869526, at *1 (S.D. Fla. March 7, 2013).

Plaintiff's proposed definition provides that class members are those individuals who received calls to their cell phones made with an automatic telephone dialing system or using a prerecorded or artificial voice and for whom **Defendant's records do not show prior express consent for those calls.** (Complt. ¶8, emphasis added). This proposed definition, on its face, is inadequate to support a class action. The element of consent requires an individualized inquiry—just because Defendant may not have a record of consent, does not mean that the recipient did not provide such consent. For example, the consent could have been oral or the Defendant may no longer have the record of consent.[3] Significantly, class action treatment is inappropriate where individualized inquires of oral communications is required. See *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 480 (S.D. Fla. 2007) (and the numerous cases cited therein). Additionally, consent may have been provided in a number of ways, via website opt-in, door to door canvassing, event signup or other common means through which phone numbers are generally provided to political campaigns and organizations.

Thus, an individualized inquiry will need to be made for each potential class member under this definition. "Where determination of class members requires individual fact-finding, class certification has been denied." *Walewski v. Zenimax Media, Inc.*, Case No. 11-CV-1178, 2012 WL 834125, at *5 (Jan. 30, 2012, M.D. Fla.); *Vandenbrink*, 2012 WL 3156596, at *3 ("Given the nature of the claims and individual factual inquires required, it is apparent the individualized issues are predominant and this suit cannot proceed as a class action."). Indeed, in *Vandenbrink*, the court noted that "[s]ince the individual factual inquiry will predominate this

---

[3] Additionally, the call may have been made to a residential line (which does not require consent), but rang on the cell phone as the recipient may have forwarded the residential line to a cell phone line.

litigation, making any sort of class litigation highly impractical, the class allegations will be stricken." *Id.*

The issue of consent in TCPA actions has frequently been held to require an individualized inquiry and class certification has been denied in both state and federal courts around the country. *Balthazor v. Central Credit Services, Inc.*, 10-62435, 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012) ("Resolution of each putative class member's TCPA claim would necessarily involve an individual assessment of whether each class member consented to receive telephone calls on their cellular telephone."); *O'Neill,* 243 F.R.D. at 480 (class action not appropriate where individual inquiry into verbal communications is required); *Connelly v. Hilton Grand Vacations Co., LLC,* 12-CV-599, 2013 WL 5835414 (S.D. Cal. Oct. 29, 2013) ("Although TCPA cases are not "'per se' unsuitable for class resolution," class certification is warranted only when the "unique facts" of a particular case indicate the individual adjudication of the pivotal element of prior express consent is unnecessary.") (citing *Gene & Gene LLC v. BioPay LLC,* 541 F.3d 318, 326 (5th Cir. 2008)); *Gannon v. Network Tel. Servs., Inc.*, CV 12-9777-RGK (PJWx), 2013 WL 2450199, at *3 (C.D. Cal. Jun. 5, 2013) (holding that the predominance requirement is not satisfied where the issue of consent required individual inquiry regarding class members' interactions with defendant); *Gene & Gene,* 541 F.3d at 329 (district court abused discretion in granting TCPA class certification where plaintiff "failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class…leading to the conclusion that myriad mini-trials cannot be avoided"); *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.,* 274 F.R.D. 229 (S.D. Ill. 2011) (certification under TCPA denied where proposed class included substantial number of persons who had voluntarily given their numbers to casino and modifying the class to include only those receiving unsolicited

LEGAL28542791.1

calls was unmanageable); *Sadowski v. MedlOnline, LLC*, 07-2973, 2008 WL 489360, at *3 (N.D. Ill. February 20, 2008) (denying TCPA class where the class definition was too broad, including all persons in the state with fax machines who were sent faxes where the defendant could not prove prior consent, and did not permit the potential class members to ascertain their membership within the class); *Cicero v. U.S. Four, Inc.*, 07AP-310, 2007 WL 4305720 (Ohio Ct. App. 10th Dist. Franklin County 2007) (class certification denied on the basis identifying those who consented and those who did not); *Livingston v. U.S. Bank, N.A.*, 58 P.3d 1088, 1090 (Colo. Ct. App. 2002) ("the question whether any particular fax recipient gave 'prior express invitation or permission' would have to be decided on an individual basis and therefore would overwhelm, let alone predominate over, the common issues").

Given the many ways in which consent can be given for political calls to cell phones, as well as the fact that such consent may be given orally, it is clear that individualized inquiries and "mini-trials" on the issue of consent would be necessary. Accordingly, class treatment in this case is not appropriate.

**D.  The Superiority Requirement is Not Met Where The Aggregation of Statutory Damages Results in Disproportionate Exposure**

Plaintiffs' prayer for relief seeks "statutory damages to Plaintiff *and the class*." (Complt. VI, (c), emphasis added). Thus, Plaintiff requests aggregated statutory penalties where there is no actual harm and where such aggregated amounts would exceed any assets available from Defendant.[4] The availability of statutory damages for TCPA violations where there is no actual harm, combined with the class action mechanism, may lead to unconstitutionally excessive fines and penalties:

---

[4] As reflected in the October 15, 2013 filing with the Federal Election Commission, Defendant has approximately $372,000 in Cash on Hand and $3.37 million in incurred debts. http://www.fec.gov/fecviewer/CandidateCommitteeDetail.do

> In the past several years, the due process limits on punitive damages have garnered a great deal of attention from courts, scholars, and practitioners. While punitive damages have been under the analytical microscope, statutory damages—civil penalty amounts prescribed by legislatures for violations of particular statutes—have been all but forgotten. ***When combined with the procedural device of the class action, aggregated statutory damages claims can result in absurd liability exposure in the hundreds of millions—or even billions—of dollars on behalf of a class whose actual damages are often nonexistent.***
>
> * * * *
>
> ***Aggregating statutory damages claims warps the purpose of both statutory damages and class actions.*** Combining the two mechanisms creates "a form of double counting which could easily lead to overdeterrence." (citing Richard A. Nagareda, *Aggregation and its Discontents: Class Settlement Pressure, Class-wide Arbitration and CAFA,* 106 Colum. L. Rev. 1872, 1878, 1887). Together, the two devices can create a constitutionally excessive statutory damages award.

Sheila B. Scheuerman, *Due Process Forgotten: The Problem of Statutory Damages and Class Actions,* 74 Mo. L. Rev. 103, 103-04, 115. (emphasis added). It is worth noting that in addition to the court in *Connelly* as noted above, several state courts have also expressed their concern that class actions under the TCPA are not appropriate. For example, the Appellate Court in New Jersey held that "the class action suit is not a superior means of adjudicating a TCPA suit." *Local Baking Products, Inc. v. Kosher Bagel Munch, Inc.,* 421 N.J. Super. 268, 280, 23 A.3d 469, 476 (Sup. Ct. N.J. 2011). The court's decision was based largely on the non-de minimis nature of the statutory damages ($500 to $1500 per violation) and the fact that relief was available in small claims court.

Previously, and in a foreshadowing of the proliferation of TCPA cases that was to come, an Illinois state court judge succinctly and openly questioned the wisdom of class actions for TCPA violations. In *Kim v. Sussman,* 2004 WL 3135348, , at *3 (Ill. Cir. 2004), Judge Mason noted that "...certifying a class threatens to impose on Defendant a virtually automatic liability

to thousands of individuals in a sum that dwarfs the magnitude of the harm involved." Given the proliferation of TCPA lawsuits in recent years, the concerns noted by those courts have clearly come to pass in a magnitude likely unimagined at the time of those rulings.

Judge Mason's comments were indeed prescient. In 2008, there were 14 TCPA cases filed in federal court, while last year, that number shot up to over 1,000. One study estimates that TCPA lawsuits rose by 65 percent in 2012 alone.[5] The numbers are on track to be even higher this year. Some of the settlements have been in the tens of millions of dollars with over 80-95% of the funds paid out as attorney fee awards.[6] As Judge Posner has noted in the TCPA context, "[c]ertification as a class action can coerce a defendant into settling on highly disadvantage terms regardless of the merits of the suit." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011). The lack of a cap on statutory damages has created the explosion in TCPA litigation mentioned above and the TCPA is merely used as a vehicle by Plaintiffs' lawyers to pursue windfall damages and fee awards where there is no actual harm resulting in the "absurd liability exposure" noted by Prof. Scheuerman.[7]

The potential exposure faced by Defendants is essentially mandated by the statute and is wholly disproportionate to any alleged "harm" when aggregated in class actions where there is no cap on damages. These issues are relevant to the determination as to whether a class action is a superior method of adjudicating these claims. By aggregating statutory damages, the awards are wholly disproportionate to the actual harm suffered (none) or the alleged misconduct the

---

[5] http://www.insidearm.com/daily/debt-collection-news/debt-collection/fdcpa-lawsuits-continue-steady-decline-as-tcpa-suits-rise/

[6] *See e.g. Rose v. Bank of America*, Case No. 11-2390 (N.D. Cal.), Dkt. 59-1 at 4.02, 5.01; *Agne v. Papa John's Int'l*, Case No. 10-1139 (W.D. Wash.), Dkt. 371 at p. 5, Dkt 389 at ¶¶10-11. (Attorney Fee Award was based on class of 220,000 yet less than 3400, or approximately 1.5%, filed valid claims).

[7] Other similar consumer protection statutes contain caps on statutory damages and class action awards. *See e.g.* Federal Debt Collection Practices Act, 15 U.S.C. §1692k(a) and the Truth in Lending Act, 15 U.S.C. 1640(a)(2)(B).

LEGAL28542791.1

statutes are intended to curtail. Instead, they have an *in terroram* effect resulting in potential liability that could far exceed a Defendant's net worth and thereby forcing Defendants to settle cases that are entirely without merit as the potential exposure is catastrophic. This was clearly not the intent of the statute. *Omerza v. Bryant & Stratton*, 2007 Ohio 5215, 2007 WL 282000 (Ohio Ct. App. 2007) (Congress did not intend for the TCPA to create a "cottage industry" for litigation resulting in multi-million dollar verdicts); *Freedman v. Advanced Wireless Cellular Communications, Inc.*, SOM-L-611-02, 2005 WL 2122304 (N.J. Super. Ct. Law Div. June 24, 2005) (TCPA class action held invalid given legislative history showing such relief was not intended).

Moreover, the aggregated penalty award is tantamount to an "excessive fine" which could raise due process concerns. Courts have recognized that combining a minimum statutory damages provision with a class action complaint "may expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages —yet ones that are awarded as a matter of strict liability rather than for the egregious conduct typically necessary to support a punitive damages award." *Parker v. Time Warner Entm't. Co.*, 331 F.3d 13, 22 (2d Cir.2003) (further acknowledging the "legitimate concern that the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues). With the scope of "damages" awarded in TCPA class actions, it is evident that the damages awards have become wholly "out of all reasonable proportion to the actual harm suffered," implicating due process concerns.

### E. Aggregating Statutory Damages May Also Chill Protected Political Speech

The First Amendment concerns underlying this case are highlighted by Congress' and the FCC's own rationales for creating an exception to the TCPA for non-commercial speech.

Congress itself recognized the potential First Amendment problem when it authorized the FCC to create an exemption consistent with this Court's commercial speech jurisprudence. *See* Pub. L. 102-243, § 2(9), 105. Stat. 2394 (1991) ("Individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices"); *id.* § 2(13) ("the Federal Communications Commission should have the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy, or for noncommercial calls, consistent with the free speech protections embodied in the First Amendment of the Constitution"). The FCC likewise confirmed the potential First Amendment problem when it found that the primary target of the TCPA was commercial speech, which has a relatively lower value on the constitutional spectrum than non-commercial speech and was the primary cause of the invasion of privacy that justified the TCPA in the first place. *See* Report and Order, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act Of 1991*, 7 F.C.C.R. 8752, 8773 (Oct. 16, 1992) ("the TCPA seeks primarily to protect subscribers from unrestricted commercial telemarketing activities"); *id.* ("The legislative history of the TCPA contrasts calls made by tax-exempt nonprofit organizations with commercial calls and indicates that commercial calls have by far produced the greatest number of complaints").

Indeed, in deciding to exempt non-commercial speech from most of the restrictions contained in the TCPA, the FCC specifically found that non-commercial communications did *not* pose the same harms as commercial solicitations, thus undermining any possibility of a compelling or even a substantial interest in restricting such non-commercial speech. *See id.* at 8774 ("no evidence has been presented in this proceeding to show that non-commercial calls

represent as serious a concern for telephone subscribers as unsolicited commercial calls"). Thus, no consent is required for political calls made to residential landlines but some form of consent (oral or written) continues to be required for such calls to cell phones, notwithstanding the high percentage of residences who now only have cellular lines. (*See* footnote 3, *supra*).

In this case, the types of calls alleged to be made were political calls which enjoy a high measure of First Amendment protection. The First Amendment "affords the broadest protection to ... political expression." *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 346, 115 S. Ct. 1511, 1518, 131 L.Ed.2d 426 (1995). The TCPA is essentially a "strict liability" statute where intent is not required to be established except for awards of treble damages. *Penzer v. Transportation Ins. Co.,* 545 F.3d 1303, 1310 (11th Cir. 2008). The strict liability nature of the TCPA combined with the class action vehicle and wildly disproportionate damages as applied to political speech, seriously compromises the First Amendment protection that characterizes political speech. Aggregating statutory damages for class action purposes raises certain First Amendment concerns that are not present in connection with commercial telemarketing. Exposing political campaigns or organizations to tens of millions of dollars in "damages" for alleged TCPA violations in connection with protected speech, where the Plaintiffs need not show *any harm whatsoever*, would have the effect of chilling such speech in a manner inconsistent with the protections of the First Amendment and the stated purpose of the TCPA. *See e.g. New York Times Co. v. Sullivan,* 376 U.S.254, 282, 84 S.Ct. 710, 11 L.Ed. 2d 686 (1964) (damages must be proven, not presumed, where constitutionally protected speech is at issue).

Moreover, federal campaign committees, such as Obama for America, are subject to strict limits on how they can raise funds. 2 U.S.C. §441a(f). After an election has passed, and given that President Obama is not running for any future office, the campaign can only solicit

LEGAL28542791.1

contributions up to $2,600 from individuals, 2 U.S.C. § 441a(a)1(a), and only from individuals who have not previously given this maximum contribution for the general election. 11 CFR 110.1(b)(3)(iii)(C). In other words, Obama for America can no longer fundraise from its strongest supporters. It may not accept contributions from corporations, labor unions, or a number of other prohibited sources. See, e.g., 2 U.S.C. §§ 441b(a), 441c(a), 441e(a). The campaign is also only permitted to raise funds to retire its debts, 11 CFR 110.1(b)(3)(i), and is expected to file for termination when it no longer has any outstanding debts or obligations. 2 U.S.C. § 433(d)(1); *see also* 11 CFR 102.3. As detailed on the Obama for America's last FEC report, filed publicly on October 15th, it has Cash on Hand of approximately $372,000 and debts of $3.37 Million. (*See* footnote 4, *supra*).

Subjecting campaign organizations like Obama for America to a class action seeking millions of dollars in statutory damages, where the actual damages are nonexistent, for engaging in protected political speech, is not a "superior" method of adjudication and indeed, would be improper and would serve to chill protected speech.

### F. Plaintiff's Proposed Class Constitutes an Impermissible "Fail-Safe" Class

Plaintiff's proposed class definition is an impermissible "fail-safe" class. A fail-safe class is one whose members are explicitly defined by the merits of their legal claims and, consequently, whose members cannot be identified until the defendant is found liable. *Brazil v. Dell*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (striking plaintiffs' class allegations in false advertising suit because, based on the proposed class definition, "[t]o determine who should be a member of these classes, it would be necessary for the court to reach a legal determination that [defendant] falsely advertised").

Courts have consistently denied class certification where "the class definition precludes the possibility of an adverse judgment against class members," as "the class members either win

or are not in the class." *Genenbacher v. Centurytel Fiber Co. II, LLC*, 244 F.R.D. 485, 488 (C.D. Ill. 2007). In *Genenbacher*, the proposed class definition defined the class as owners whose land was not subject to an easement and where the telecommunications network entered the land without obtaining consent. In determining that the proposed class was a "fail-safe" class, the court noted that if the Defendant proved that the property was subject to a void easement and the owner had consented, the Defendant would be entitled to judgment in its favor. However, the court "could not enter judgment against the particular owner because the owner would no longer fit the class definition…This type of class definition is called a "fail-safe" class because the class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class. The proposed class definition, thus, is improper because the Court cannot enter an adverse judgment against the class." *Id.*

Put another way, "the fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kumar v. Radio Shack Corp.*, 375 Fed. Appx. 734, 736 (9th Cir. 2010). *See also, Rundleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). In fact, a "proposed 'fail-safe' class should not be certified because it is unfair to defendants, it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability." *Mazzei v. The Money Store*, 288 F.R.D. 45, 55 (S.D. N.Y. 2012).

Here, Plaintiff has tailored the definition of the proposed class to include only those persons who received a call on their cell phone through the use of an automatic telephone dialing system or an artificial or pre-recorded voice and for whom Defendant's records do not show prior express consent. Since the burden is on the defendant to establish consent, this proposed

class constitutes a textbook fail-safe class, whose members cannot be ascertained until the court makes a determination as to Defendant's purported liability.

## III. CONCLUSION

Plaintiff's attempt to convert her individual allegations of an alleged TCPA violation into a class action should be rejected. For the reasons stated herein, Plaintiff's class action allegations should be stricken and/or the complaint dismissed.

Dated: December 2, 2013                By:  ___/s/ Gregg D. Thomas___

Gregg D. Thomas
Florida Bar No. 223913
Rachel E. Fugate
Florida Bar No. 0144029
Thomas & LoCicero PL
601 South Boulevard Tampa, FL 33606
Telephone:813.984.3060
Facsimile: 813.984.3070
gthomas@tlolawfirm.com
rfugate@lolawfirm.com

Debra R. Bernard, Bar No. 6191217 (*pro hac vice*)
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone:   312.324.8400
Facsimile:   312.324.9400

Graham M. Wilson, Esq. (*pro hac vice*)
Perkins Coie LLP
700 13th Street NW, Suite 600
Washington, DC 2005

Attorneys for Defendant
Obama for America

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of December, 2013, a true and correct copy of the foregoing is being electronically filed and will be furnished via CM/ECF to:

| | |
|---|---|
| Richard M. Paul, III, Esq.<br>Jack D. McInnes, Esq.<br>PAUL McINNES LLP<br>2000 Baltimore, Suite 100<br>Kansas City, MO 64108<br>paul@paulmcinnes.com<br>mcinnes@paulmcinnes.com | Joseph J. Mellon, Esq.<br>Mary F. Mellon, Esq.<br>THE MELLON LAW FIRM<br>1401 Wewatta St., #806<br>Denver, CO 80202<br>jmellon@mellonlaw.com<br>mmellon@mellonlaw.com |
| Jeffrey M. Paskert, Esq.<br>MILLS PASKERT DIVERS<br>100 North Tampa St., Suite 3700<br>Tampa, FL 33602<br>paskert@mpdlegal.com | Andrew L. Quiat, Esq.<br>THE LAW OFFICES OF ANDREW L. QUIAT, P.C.<br>7955 E. Arapahoe Court, Suite 1250<br>Centennial, CO 80112<br>aquiat@alqpclaw.com |
| Graham M. Wilson, Esq.<br>Perkins Coie LLP<br>700 13th Street NW, Suite 600<br>Washington, DC 20005 | Debra R. Bernard, Esq.<br>Perkins Coie LLP<br>131 S. Dearborn St., Suite 1700<br>Chicago, IL 60603 |

By: _____/s/ Gregg D. Thomas_____
        Attorney