**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LORI SHAMBLIN, individually and on**
**behalf of others similarly situated,**

              **Plaintiff,**

**v.**                                                    **Case No. 8:13-cv-2428-T-33TBM**

**OBAMA FOR AMERICA, DNC SERVICES**
**CORPORATION, and NEW PARTNERS**
**CONSULTING, INC.,**

              **Defendants.**
_____/

## O R D E R

THIS MATTER is before the Court on Plaintiff's **Motion to Compel Documents**

**and Deposition Testimony Clarifying the Voter File** (Doc. 206) and Defendant DNC

Services Corporation's response in opposition (Doc. 209).  A hearing was conducted on April

14, 2015.

By her motion, Plaintiff seeks to compel DNC Services Corporation ("DNC") to

produce the "data dictionaries" for the fields contained in the DNC's Voter File database and

to compel DNC's corporate representative to testify regarding the Voter File database.

Plaintiff claims that while the DNC has produced Plaintiff's Voter File, it has not produced

the data dictionaries for the Voter File database nor fully identified the fields of that database,

which are necessary to understand and analyze the information in the Voter Files.  Thus, she

asserts that the data dictionaries are "the source code for the database without which it is

impossible to run complete, accurate queries (or searches) or know what information is stored in the massive database."  (Doc. 206 at 4).

By Plaintiff's argument, the limited review granted to her counsel raises questions and demonstrates her need for the whole of the data dictionary.  Plaintiff points to the screenshot of her Voter File (Doc. 206-7) produced by the DNC, which she submits contains a "field" called "Robocalls" with "the correlating data for [Plaintiff] indicating 'No Robocalls.'"  (Doc. 206 at 5).  Despite this entry on her file, the DNC spreadsheet containing more than 2,300 data fields that Plaintiff's counsel was permitted to view did not identify"Robocalls" or "Do Not Call" as data fields and on this basis Plaintiff urges that the "litigation driven spreadsheet created by defense counsel as a pseudo-data dictionary was incomplete…. And the data field not identified by the DNC goes directly to the heart of this litigation." (Doc. 206 at 5).

Regarding the Rule 30(b)(6) deposition on October 1, 2014, Plaintiff complains that the DNC's corporate representative, Lindsay Reynolds, was not knowledgeable about the deposition topics and was "so unprepared that the majority of Plaintiff's questions went unanswered." (Doc. 206 at 3).  Thus, Plaintiff seeks to compel a second deposition of a DNC corporate representative with knowledge of the Voter File database, because Ms. Reynolds was unable to testify regarding same.

The DNC begins by noting that the instant motion was filed on the last day of discovery and seeks matters not relevant to issues currently under consideration by the Court. Moreover, it claims that it has consistently interposed its objection to providing the data dictionary since June 2014 because it is highly proprietary and confidential to the DNC.  The

2

DNC explains that the Voter File is a dynamic database that contains information about voters including historical voting patterns, demographic information, political contribution information, and other information developed by different campaigns, and its use is governed by written exchange agreements (*see e.g.* Doc. 141-8).  The DNC claims that between June and September 2014, it attempted to reach compromise agreements with Plaintiff regarding the data dictionary prior to the corporate representative deposition.  Thus, in September 2014 Defendants' counsel allowed Plaintiff's counsel to view the data dictionary in a secure manner and location so as to allow counsel to identify the relevance of the information and to narrow the requests.  Plaintiff did not thereafter identify specific categories for discovery and continued to seek the entire data dictionary.  Plaintiff then proceeded with the deposition of the DNC representative on October 1, 2014, and made no inquiry of the representative or any other witness concerning what "No Robocalls" means.  The DNC points out that Plaintiff did not move to compel the information either before or after the deposition and waited until the close of discovery to file this motion to compel.  Moreover, Plaintiff failed to seek further discovery from other witnesses more knowledgeable about the database, and she continues to be unable to articulate why the whole of the data dictionary is relevant.  As for Plaintiff's Voter File screenshot, such was created from available sources and the existence of a Robocall column on that screenshot does not reveal that the DNC has withheld information concerning such a "field" from its disclosures of the database fields.

Regarding its corporate representative, the DNC responds that in September 2014, it properly objected to certain Rule 30(b)(6) topics and advised Plaintiff's counsel that the witness would not be prepared to answer questions relating to topics to which it objected.

3

Plaintiff made no attempt to address the objections and proceeded to the deposition.  At the deposition, Ms. Reynolds testified that the IT Director Andrew Brown could answer technical questions regarding the database, but Plaintiff never sought to depose Mr. Brown or another knowledgeable witness.  Further, the DNC claims that Plaintiff's characterization of Ms. Reynolds' testimony is inaccurate.

Upon consideration, **Plaintiff's Motion to Compel Documents and Deposition Testimony Clarifying the Voter File** (Doc. 206) is **DENIED without prejudice.**  As an initial matter, I find the motion untimely filed.  Discovery in this case has, for the present, closed.  While the motion was filed on the last day of discovery, Plaintiff offers no reasonable excuse for the delay in bringing this matter before the Court.  Moreover, the delay in seeking relief and Plaintiff's failure to pursue this discovery through other available means or witnesses over many months suggests that the data dictionary is of questionable relevance and that the motion is rather intended for purposes of delay.[1]  In any event, upon representations and concessions made at the hearing, I am wholly unpersuaded that this additional discovery is necessary for full and fair consideration of the matters raised on summary judgment or in connection with the pending class certification motion.  As suggested at the hearing, depending on the outcome of the pending motions for summary judge and class certification, it perhaps will be appropriate to revisit the matter of more focused discovery concerning the

---

[1]Apart from considerations of relevance, discovery related to the whole data dictionary and the complete Voter File database would be a major undertaking wholly out of line with the Court's Scheduling Order and unwarranted in light of the limited allegations in this dispute.

4

data dictionary and the Voter File.  However, at present and in the given circumstances, the

motion is not well-taken.

        **Done and Ordered** in Tampa, Florida, this 15th day of April 2015.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

5