UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LORI SHAMBLIN, individually
and on behalf of all others
similarly situated,

       Plaintiff,

                         Case No. 8:13-cv-2428-T-33TBM

v.

OBAMA FOR AMERICA, DNC
SERVICES CORPORATION, and
NEW PARTNERS CONSULTING, INC.,

       Defendants.
_____/

## ORDER

This cause comes before the Court for consideration of Plaintiff Lori Shamblin's Motion for Class Certification (Doc. # 146), Motion to Strike the Declaration of Jerry Samargia (Doc. # 177), and Motion to Stay Case Management Deadlines (Doc. # 192). Also before the Court are Defendants Obama for America, DNC Services Corporation, and New Partners Consulting, Inc.'s Joint Motion to Exclude Expert Reports and Testimony of Anya Verkhovskaya and Robert Biggerstaff (Doc. # 180). The Motions are ripe for the Court's review. The Court held an evidentiary hearing on the Motions on March 24, 2015. (Doc. # 202). Upon due consideration and for the reasons set forth below, the Court denies the Motions.

I.  **Background**

After receiving two unsolicited auto-dialed calls to her cellular telephone, Shamblin filed a putative class action against Obama for America on September 19, 2013, for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Doc. # 1). The TCPA makes it illegal to call any telephone number assigned to a cellular telephone service using an automatic-telephone-dialing system or an artificial or pre-recorded voice. 47 U.S.C. § 227(b)(1)(A).

On September 20, 2013, Shamblin filed a Motion to Certify Class Action. (Doc. # 5). This Court denied the Motion without prejudice on October 9, 2013, as the Motion was a placeholder devoid of the substantive factual and legal allegations necessary for this Court to engage in a Federal Rule of Civil Procedure 23 analysis. (Doc. # 13). Thereafter, on December 2, 2013, Obama for America filed its Motion to Dismiss and Motion to Strike Class Allegations, which the Court denied on February 18, 2014. (Doc. ## 31, 51).

On April 22, 2014, Shamblin sought leave to amend her Complaint to add DNC Services, which the Court granted after holding a hearing. (Doc. ## 74, 86, 87). Thereafter, on August 14, 2014, Shamblin filed her Second Amended Complaint adding

New Partners as a Defendant pursuant to Rule 15(a)(2), Fed. R. Civ. P. (Doc. # 109).

In her Second Amended Complaint, Shamblin contends that "despite [the TCPA's] prohibition of robocalls to cell phones, and the FCC's reminder that such calls are illegal, President Obama's principal campaign committee, defendant Obama for America, with the assistance and participation of defendant[s] DNC Services . . . and New Partners Consulting, Inc., called voter cell phones with both auto-dialed and pre-recorded calls urging the recipients to vote for Barack Obama in the 2012 presidential election." (Id. at ¶ 2). Shamblin alleges that Defendants violated the TCPA, "by calling voters' cell phones with auto-dialed calls and pre-recorded messages." (Id. at ¶ 21). Specifically, Shamblin claims that, "[b]eginning in September 2012, and continuing up to the November 2012, election, Defendants initiated unsolicited auto-dialed telephone calls to plaintiff Shamblin's cellular telephone number. When plaintiff Shamblin did not answer the call, Defendants' pre-recorded message was left on her cellular telephone's voice mail system." (Id. at ¶ 22).

Shamblin "is informed and believes that the phone number was assigned to Organizing for America Florida, which was a project of the DNC that made and/or paid for calls using

outside vendors such as New Partners Consulting, Inc." (Id. at ¶ 24). Shamblin further indicates that she "had not given Defendants her express consent to call her cell phone with automatically-dialed or pre-recorded messages. She had never given Defendants her telephone number and, prior to receiving Defendants' messages, had never even heard of Obama for America." (Id. at ¶ 25).

New Partners responded to the Second Amended Complaint on September 10, 2014, by filing an Answer and Affirmative Defenses. (Doc. # 118). Shamblin filed an Amended Motion for Class Certification on September 23, 2015. (Doc. # 120). New Partners then filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) on September 25, 2014, alleging that it offered Shamblin full relief under Rule 68, Fed. R. Civ. P. (Doc. # 122). On November 5, 2014, this Court entered an Order denying the Motion to Dismiss. (Doc. # 139).

Simultaneously, this Court denied without prejudice Shamblin's Amended Motion for Class Certification. (Doc. # 140). Thereafter, New Partners served Shamblin with a second Rule 68, Fed. R. Civ. P., Offer of Judgment, and accordingly sought dismissal in a second Motion to Dismiss. (Doc. # 145 at 3). In an Order dated November 26, 2014, the Court denied

4

New Partners second Motion to Dismiss. (Doc. # 156). The Court rejected New Partners' mootness arguments because New Partners' offers for judgment only addressed New Partners' conduct, and did not address Shamblin's requests for relief against the other Defendants. (Id.).

On November 7, 2014, DNC Services moved for summary judgment, which this Court denied. (Doc. ## 141, 213). At this juncture, the Court is called upon to decide whether Shamblin's case should be certified as a class action under Rule 23, Fed. R. Civ. P.  In connection with her motion for class certification, Shamblin filed the expert reports of Anya Verkhovskaya and Robert Biggerstaff.  Defendants seek an order excluding these experts under the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 582 (1993).  In addition, in opposing class certification, New Partners submitted the declaration of Jerry Samargia, in which Samargia summarizes an independent survey conducted by a New Partners affiliate.  Shamblin seeks an order striking Samargia's declaration.  The Court will address the challenges to Shamblin's experts as well as to Samargia's declaration prior to engaging in its analysis of Shamblin's Motion for Class Certification.

## II.  **Verkhoskaya, Biggerstaff, and Samargia**

Under Daubert, this Court serves a gatekeeper role in evaluating the admissibility of expert evidence and testimony. In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999), the Court explained "Daubert's general holding-setting forth the trial judge's general 'gatekeeping' obligation-applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Id. Federal Rule of Evidence 702, governing the admissibility of expert evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Eleventh Circuit has adopted a three part analysis for determining whether expert testimony is admissible under Daubert and Federal Rule of Evidence 702. Under this analysis, expert evidence is admissible if the court finds: (1) the expert is competent and qualified to testify regarding the matters that he intends to address; (2) the methodology

by which the expert reaches his conclusions is sufficiently reliable; and (3) the expert, through scientific, technical or specialized expertise, provides testimony that will assist the trier of fact to understand the evidence or determine a fact in issue.  See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340-41 (11th Cir. 2003)(citing City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)(citing Daubert, 509 U.S. at 589)); Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001).

The Court held a Daubert hearing and heard testimony from both of Shamblin's proffered experts. (Doc. # 202).  The Court determines that both Verkhoskaya and Biggerstaff are amply qualified, and their relevant experience, education, and training render them competent to offer expert testimony in TCPA cases.  In addition, both of Shamblin's experts employ generally reliable methodologies which entail, inter alia, performance of detailed statistical analysis and utilization of LexisNexis data that has been independently verified by Verkhovskaya's company (A.B. Data).  Due to the highly technical nature of the proceedings, the Court determines that the challenged experts are in a position to substantially assist the trier of fact.  Tellingly, both of Shamblin's experts have offered expert testimony in TCPA cases, and this

Court determines that both experts satisfy the strictures of Daubert. See Hunt v. 21 Mortg. Corp., No. 2:12-cv-2697, 2014 WL 1664288, at *4 (N.D. Ala. Apr. 25, 2014)(citing Biggerstaff's credentials and collecting cases in which he has been certified as an expert witness); (Verkhovskaya Curriculum Vitae including a list of cases in which Verkhovskaya has served as an expert witness)(Doc. # 148-24 at 30-56). The Court accordingly denies Defendants' Motion to exclude Shamblin's experts.

The Court likewise denies Shamblin's Motion to Strike the declaration of Jerry Samargia. Samargia, a shareholder of New Partners, Inc., submitted a declaration in connection with New Partners' opposition to Shamblin's Motion for Class Certification. His declaration describes a survey in which New Partners, Inc. called various phone numbers that Shamblin claims are cellular telephone numbers that Defendants illegally robocalled. Samargia does not summarize the results of the survey. The implication of the survey appears to be that numerous phone numbers that Shamblin claims are cellular telephone numbers are not actually assigned to cellular telephones.

Shamblin seeks an order striking Samargia's declaration as "triple hearsay." (Doc. # 177 at 1). She argues that

Samargia's declaration "presents neither the script of the survey nor the survey results themselves." (Id. at 2). Shamblin also argues that Samargia's declaration is inadmissible as lay testimony and that Samargia is not qualified as an expert.

The Court notes that "a motion to strike is a drastic remedy and is disfavored by the courts." Schmidt v. Life Ins. Co. of N. Am., 289 F.R.D. 357, 358 (M.D. Fla. 2012). Furthermore, in the context of determining class certification, the evidence rules are relaxed because it is a determination made by the court, not a jury. And, if the Court were to follow Shamblin's argument that the Court should strike Samargia's declaration because it contains hearsay, the Court would also be required to exclude a majority of Shamblin's exhibits tendered in support of her Motion for Class Certification, as well as the testimony of Shamblin's own experts, as each of these submissions also contains hearsay. The Court declines to strike the declaration based on its inclusion of hearsay statements.

In addition, even if the Court were inclined to strictly apply the Federal Rules of Evidence in this matter, it would not be compelled to strike Samargia's declaration. The declaration is admissible under the business records

exception in Rule 803(6).   The declaration would also be admissible under Rule 807, the residual hearsay exception. The Eleventh Circuit has ruled that survey results can be admissible, even if they are founded upon, or contain, hearsay evidence. <u>See</u> <u>Debra P. v. Turlington</u>, 730 F.2d 1405, 1414 (11th Cir. 1984); <u>Holiday Inns, Inc. v. Holiday Out</u>, 481 F.2d 445, 447 (5th Cir. 1973)(consumer survey admissible in trade name case, and "format of the questions and the manner of conducting the survey" go to the weight of the evidence, not its admissibility.).

Having denied the Motion to exclude Shamblin's experts and the Motion to strike the declaration of Samargia, the Court will now address the Motion for Class Certification.

## III. **Motion for Class Certification**

Shamblin seeks certification of the following proposed class: "All persons in Florida who received one or more non-emergency telephone calls from Defendants in September through November 2012 in support of President Obama's re-election to a cellular telephone through the use of an automatic-telephone-dialing system or an artificial or pre-recorded voice, and for whom Defendants' records do not show prior express consent for those calls." (Doc. # 146 at 1).

### A.   **Legal Standard**

A district court has broad discretion in determining whether to certify a class. Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 (11th Cir. 1992); Griffin v. Carlin, 755 F.2d 1516, 1531 (11th Cir. 1985). As explained in Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181, 1187 (11th Cir. 2003), Federal Rule of Civil Procedure 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." Under Rule 23(a), a class may be certified only if:

(1)  the class is so numerous that joinder of all members is impracticable;

(2)  there are questions of law or fact common to the class;

(3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The burden of proof to establish the propriety of class certification rests with the advocate of the class, and failure to establish any one of the four Rule 23(a) factors and at least one of the alternative requirements of Rule 23(b) precludes class certification. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997).

This Court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 161 (1982). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." Valley Drug Co., 350 F.3d at 1188, n.15; see also Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978)("The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. . . . The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.")(internal citations omitted).

## B.   Rule 23(a) Factors

### 1.   Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "mere allegations of numerosity are insufficient," Fed. R. Civ. P. 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class."

Manno v. Healthcare Revenue Recovery Grp., LLC, 289 F.R.D. 674, 684 (S.D. Fla. 2013); see Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009); Evans v. United States Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983)(explaining that the class representative is not required to establish the exact number in the proposed class). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding that the class actually certified meets the numerosity requirement." Manno, 289 F.R.D. at 684 (quoting Vega, 564 F.3d at 1267).

Although mere numbers are not dispositive, the Eleventh Circuit has indicated that less than twenty-one class plaintiffs is inadequate, and more than forty class plaintiffs is generally enough to satisfy the rule. Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986). The Court may also consider factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits." Walco Inv., Inc. v. Thenen, 168 F.R.D. 315, 324 (S.D. Fla. 1996).

There is a dispute between the parties regarding the number of individuals who received robocalls to their cellular telephones in this TCPA action. One of Shamblin's expert witnesses, Verkhoskaya, "estimates . . . that Defendants called approximately 71,564 unique phone numbers assigned to cell phones at the time the calls were made using an [automatic telephone dialing system (ATDS)] to auto-dial the numbers to convey a pre-recorded message." (Doc. # 148 at 18). Shamblin submits that "these numbers represent area codes geographically dispersed throughout the state, making joinder impracticable." (Id.).

Defendants challenge the methodology that Verkhoskaya employed in reaching her conclusion that Defendants placed over 70,000 robocalls to cellular telephones in Florida during the relevant time. However, even crediting each and every argument advanced by Defendants, the Court arrives at the inescapable conclusion that Shamblin has satisfied the numerosity prong of Rule 23(a)(1). For instance, if the Court were to interpret Samargia's declaration statements and the results of New Partners, Inc.'s survey to find that only 1.5% of the 71,564 putative class members actually received robocalls to their cellular telephones without their consent,

14

that would still include 1,073 individuals.[1]  As the Eleventh
Circuit has held that Rule 23's numerosity requirement can be
met by the inclusion of "more than forty" individuals, the
Court determines that Shamblin has satisfied the numerosity
requirement here. Cox, 784 F.2d at 1553.

### 2.   Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that
there be "questions of law or fact common to the class." Fed.
R. Civ. P. 23(a)(2). Commonality pertains to the
characteristics of the group or class as a whole, unlike
typicality which refers to the individual characteristics of
the class representative as compared to those of the class
members. Piazza v. Ebsco Indus. Inc., 273 F.3d 1341, 1346
(11th Cir. 2001) (citing Prado-Steiman v. Bush, 221 F.3d 1266,
1279 (11th Cir. 2000)).

Commonality "does not require complete identity of legal
claims." Johnson v. Am. Credit Co. of Ga., 581 F.2d 526, 532
(5th Cir. 1978). In fact, commonality can be satisfied even

---

[1] Samargia indicates in his declaration that, with respect to
New Partners, Inc.'s independent survey: "Only 1.5% of the
respondents who stated that he/she received an automated call
in 2012, stated that the number dialed was his/her cellphone
number in 2012, that they did not recall providing the number
to OFA/DNC in 2012, and did not remember taking action with
OFA/DNC in 2012." (Doc. # 168-1 at 6).

15

with some factual variations among class members. Armstead v.
Pingree, 629 F. Supp. 273, 280 (M.D. Fla. 1986).

In Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541
(2011), the Supreme Court clarified the commonality
requirement for class certification by specifically rejecting
the use of generalized questions to establish commonality.
Noting that "any competently crafted class complaint
literally raises common questions," the Court focused the
required discussion as follows:

> What matters to class certification . . . is not
> the raising of common questions - even in droves -
> but, rather the capacity of a classwide proceeding
> to generate common answers apt to drive the
> resolution of the litigation. Dissimilarities
> within the proposed class are what have the
> potential to impede the generation of common
> answers.

Id. at 2551 (internal citation omitted). The Court explained
that the "common contention" underpinning a finding of Rule
23(a)(2) commonality "must be of such a nature that it is
capable of class wide resolution - which means that
determination of its truth or falsity will resolve an issue
that is central to the validity of each one of the claims in
one stroke." Id.

Shamblin attempts to establish commonality by
identifying the following common questions:

(a)   Whether Defendants initiated calls using an ATDS or an artificial or pre-recorded voice;

(b)   Whether Defendants' calls were to telephone numbers assigned to a cellular telephone service;

(c)   Whether Defendants should be enjoined from placing further robocalls to cell phones in violation of the TCPA; and

(d)   Whether Defendants acted willfully or knowingly in violating the TCPA.

(Doc. # 148 at 20). According to Shamblin, "each of these questions of fact or law can be answered in a single trial on behalf of all class members, and thus satisfy the commonality requirement." (Id.).

This Court acknowledges the Supreme Court's decree that, "[f]or purposes of Rule 23(a)(2), even a single common question will do." Wal-Mart Stores, Inc., 131 S. Ct. at 2556 (2011). However, the analysis in this unique case is not that simple. Based on the current record, the Court determines that there can never be common answers to the questions of whether (1) the telephone number dialed was assigned to a cellular telephone at the time of the call and (2) whether the subscriber consented to be called.[2] There is

---

[2] While the Court declines to exclude the expert reports of Verkhovskaya and Biggerstaff, the Court disagrees with any of

no "classwide" proof on these outcome-determinative issues. Notably, Shamblin is not entitled to a presumption that all class members failed to consent and Defendants have a constitutional right to a jury determination as to whether any person consented to receiving calls to their cellular telephone. See Rink v. Cheminova, Inc., 203 F.R.D. 648, 652 (M.D. Fla. 2001).

Shamblin's ability to list some common questions does not satisfy commonality, because individualized proof will be required for each and every plaintiff, which defeats the purpose of class certification. See Balthazor v. Cent. Credit Servs., Inc., No. 10-62435, 2012 U.S. Dist. LEXIS 182275, at *16 (S.D. Fla. Dec. 27, 2012)(denying class certification of TCPA case under commonality and predominance prongs of Rule 23 because "resolution of each putative class member's TCPA claim would necessarily involve an individual assessment of whether each class member consented to receive telephone calls on their cellular telephone numbers."); Hicks v. Client Servs., Inc., No. 07-61822, 2008 U.S. Dist. LEXIS 101129, at *20 (S.D. Fla. Dec. 11, 2008)(predicating denial of class certification in TCPA case on plaintiff's failure to

_____

their conclusions tending to suggest that classwide proof is available on these specific issues.

establish Rule 23(a)(2) commonality because "consent is an issue that would have to be determined on an individual basis at trial.").

Even though the Court determines that the commonality requirement is not satisfied, thus defeating class certification, the Court will continue to analyze the remaining Rule 23 requirements to fully and completely address the issues presented.

### 3. **Typicality**

Class certification also requires that the claims of the class representatives be typical of those of the class. See Fed. R. Civ. P. 23(a)(3). In order to establish typicality, "there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." Id.

When the class representative's injury is different from that of the rest of the class, his claim is not typical and he cannot serve as the class representative. Murray v.

Auslander, 244 F.3d 807, 811 (11th Cir. 2001). Moreover, when proof of the class representative's claim would not necessarily prove the claims of the proposed class members, the class representative does not satisfy the typicality requirement. Brooks v. S. Bell Tel. & Tel. Co., 133 F.R.D. 54, 58 (S.D. Fla. 1990). "Typicality, however, does not require identical claims or defenses." Kornberg, 741 F.2d at 1337. "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." Id.

Shamblin asserts that her claims are typical because she "has the same claim for relief under the TCPA arising from the same course of conduct: Defendants' robocalling campaign in support of President Obama during the 2012 election." (Doc. # 148 at 21). The claims and relief sought by Shamblin are identical to the proposed class because the "same unlawful conduct is the sending of autodialed or pre-recorded calls to cell phones that are prohibited by the TCPA." (Id.). Shamblin states that "each of the class members were subscribers of a cell phone number to which a call was directed from Defendants through the use of an ATDS or an artificial or pre-recorded voice message to his or her cell phone." (Id.). After due

consideration, the Court determines that the typicality requirement is satisfied.

### 4.  __Adequacy of Representation__

The final requirement for class certification under Rule 23(a) is adequate representation. See Fed. R. Civ. P. 23(a)(4). A plaintiff can meet this requirement by showing that the class representative has common interests with the class members and by demonstrating that the class representative will vigorously prosecute the interests of the class through qualified counsel. Piazza, 273 F.3d at 1346.

Thus, the adequacy of representation analysis involves two inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action." Valley Drug Co., 350 F.3d at 1189 (quoting In re HealthSouth Corp. Sec. Litig., 213 F.R.D. 447, 460–61 (N.D. Ala. 2003)). "The existence of minor conflicts alone will not defeat a party's claim to class certification." Id. Rather, "the conflict must be a fundamental one going to the specific issues in controversy." Id.

Defendants do not dispute the adequacy of class counsel, and the Court independently determines that Shamblin's selected counsel are skilled and adequate in all respects.

The Court likewise finds that Shamblin is an adequate class representative who has so far, vigorously represented the action.  In addition, she has refused various proposals for settlement, demonstrating her dedication to maintaining this action for the benefit of any putative class.

### C.    Rule 23(b) Requirements

In addition to satisfying the requirements of Rule 23(a), a plaintiff seeking class certification must satisfy at least one of the alternative requirements of Rule 23(b). In her Motion for Class Certification, Shamblin seeks certification under Fed. R. Civ. P. 23(b)(2) and (3).

### 1.    Rule 23(b)(2)

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Shamblin contends that "[b]y making phone calls without properly screening for cell phone numbers according to industry standard, Defendants acted on grounds that apply generally to the class, thus justifying certification under Rule 23(b)(2)." (Doc. # 148 at 22).  "Shamblin concedes that monetary damages are not available under Rule 23(b)(2).  But she is seeking

22

certification of a hybrid class for injunctive and declaratory relief under Rule 23(b)(2) and monetary damages under Rule 23(b)(3)." (Doc. # 178 at 10). Shamblin contends that this type of hybrid certification is not precluded.

Obama for America and DNC Services argue that Shamblin "cannot have Rule 23(b)(2) claims against Obama for America, since as the campaign organization to reelect the President who is barred by the Constitution from running for a third term, there is no future activity to enjoin." (Doc. # 169 at 37). In addition, New Partners argues that "Rule 23(b)(2) certification is not warranted where, notwithstanding a request for injunctive or declaratory relief, the predominant relief requested is monetary." (Doc. # 168 at 23).

"A hybrid Rule 23(b)(2) class action is one in which class members seek individual monetary relief . . . in addition to class-wide injunctive or declaratory relief." Cox, 784 F.2d at 1554. A hybrid or Rule 23(b)(2) class action is not available where "the appropriate relief relates exclusively or predominantly to monetary damages." Holmes v. Cont'l Can Co., 706 F.2d 1144, 1155 (11th Cir. 1983) (quoting Fed. R. Civ. P. 23(b)(2) Advisory Committee Notes (1966

Amendment)).[3] If the declaratory relief is merely incidental to the monetary damages, then a Rule 23(b)(2) action is inappropriate, as is a hybrid class action. <u>Agan v. Katzman & Korr, P.A.</u>, 222 F.R.D. 692, 701-02 (S.D. Fla. 2004); <u>Swanson v. Mid Am. Inc.</u>, 186 F.R.D. 665, 668-69 (M.D. Fla. 1999).

This Court finds that certification under 23(b)(2) would be improper because Obama for America cannot be enjoined from an activity that will not take place in the future. As stated by Obama for America, there is no future activity by Obama for America as it was an organization to reelect a President that cannot be reelected again. Furthermore, Shamblin has not set forth sufficient evidence to demonstrate that the monetary relief requested does not predominate over the injunctive and declaratory relief requested. Therefore, Shamblin has not satisfied certification under Rule 23(b)(2).

## 2.   Rule 23(b)(3)

Rule 23(b)(3) is satisfied when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual

---

[3] The <u>Holmes</u> court explains that "Subsection (b)(2) was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive relief against discriminatory practices." 706 F.2d at 33.

members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]."

### a. Predominance

To satisfy predominance, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989), (internal citations omitted). "The predominance inquiry requires an examination of 'the claims, defenses, relevant facts, and applicable substantive law,' . . . to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." Babineau v. Fed. Express Corp., 576 F.3d 1183, 1191 (11th Cir. 2009)(quoting Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004)).

Under Rule 23(b)(3), "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." Klay, 382 F.3d at 1254. "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have

25

in each class member's underlying cause of action. Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief." Id. at 1255 (internal citations omitted). The Supreme Court has held that "the predominance criterion is far more demanding" than "Rule 23(a)'s commonality requirement." Amchem Prods., 521 U.S. at 624.

In her Motion, Shamblin claims that the "common nucleus of operative fact" in this action is:

> that all class members were subscribers of cell
> phone numbers who received calls through
> Defendants' use of an ATDS or an artificial or pre-
> recorded voice in violation of the TCPA. The common
> issues here – including whether Defendants
> initiated calls using an ATDS or an artificial or
> prerecorded voice and whether Defendants' calls
> were to phone numbers assigned to a cellular
> telephone service – make up the elements of
> Plaintiff's case and predominate over any alleged
> individual issues.

(Doc. # 148 at 23). Shamblin contends that the above allegations are all common questions that apply to the entire class and do not require individual proof from each class member. (Id.).

According to Obama for America and DNC Services, "whether the existence of prior express consent can be determined on a class-wide basis is integral to an evaluation

of the Rule 23 requirements." (Doc. # 169 at 21). Obama for America and DNC Services also remark that "the TCPA permits political calls to cell phones using an ATDS or an artificial or pre-recorded voice where the called party provided prior express consent." (Id. at 22). Furthermore, in 2008, "the FCC reaffirmed its position that a person who releases his/her phone number has offered 'express consent' under the TCPA, adding that 'the legislative history in the TCPA provides support for this interpretation.'" (Id.). "Where the 'source' of the number is the called party or subscribers who 'knowingly released' their cell phone number [which is] clearly the case here – where individuals provided cell phone numbers as a point of contact for OFA or to the DNC – that is evidence of consent." (Id.).

Obama for America and DNC Services further provide that "consent was obtained in a multitude of ways – such as website signups, signups at events, campaign contributions, contest submissions, online petitions, and 'offline' signups (e.g., door to door field signups) – through which individuals provided their cell phone numbers to either the DNC or OFA." (Id. at 23). Obama for America and DNC Services argue that this demonstrates the individualized inquiry that will need to be taken, which makes class certification inappropriate.

(Id.). Moreover, "given that political calls may be orally consented to – and there is no statutory or regulatory requirement that defendants keep records of that consent, there is an even greater need for an individual analysis of the facts." (Id.). Obama for America and DNC Services maintain that, "short of calling each class member to testify on the issue of consent, there is no way to determine whether the TCPA was in fact violated with each call." (Id.).

Although Shamblin has discussed TCPA cases in which class certification has been granted, those cases are easily distinguishable.  For instance, in Manno, the district court determined that the issue of consent did not preclude class certification because "the way in which the discovery was performed weeded out the individuals who may have consented to be called." 289 F.R.D. at 686.  Thus, in Manno, the court did "not have to inquire as to whether each putative class member may be subject to an independent consent defense." Id.

In contrast, in the present case, the issue of consent remains to be individually determined as to each putative class member.  In Gene & Gene LLC v. Biopay, LLC, 541 F.3d 318 (5th Cir. 2008), the district court granted a motion for class certification in a TCPA even though the defendant noted that individual inquiries concerning consent remained to be

decided. The Fifth Circuit reversed finding that "the district court abused its discretion in certifying the class." Id. at 329. The Fifth Circuit persuasively emphasized that "the predominant issue of fact is undoubtedly one of individual consent" and if "there is no class-wide proof available to decide consent," then "only mini-trials can determine this issue." Id. at 329-30.

Here, the Court finds that predominance is not satisfied based on the looming issue of consent. Shamblin alleges that Defendants' course of conduct commonly, and adversely, affected the entire class. (Doc. # 146). However, the TCPA "allows consent to be given orally, in writing, electronically, or by any other means, as long as the consent is expressly given to the particular entity making the call." Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255 (11th Cir. 2014); 137 Cong. Rec. 30,822 (1991). Therefore, the evidence necessary to establish Shamblin's claim is not common to both Shamblin and all class members. Individualized inquiries into consent (including where, how, and when) will predominate. Although affirmative defenses do not automatically preclude certification of a class, the consent issue in this case presents individual fact inquiries precluding class certification.

"Serious drawbacks to the maintenance of a class action are presented where initial determinations, such as the issue of liability *vel non*, turn upon highly individualized facts." <u>Rutstein v. Avis Rent-A-Car Sys.</u>, 211 F.3d 1228, 1235-36 (11th Cir. 2000). In the context of the present TCPA action, class certification must be denied because the individual issue of consent predominates over any issues that may be common to the putative class. In reaching this determination, the Court is persuaded by the following TCPA cases in which class certification was denied: <u>Balthazor</u>, 2012 U.S. Dist. LEXIS 182275, at *11 ("The Court rejects Plaintiff's argument that consent is not an obstacle to class certification."); <u>Hicks</u>, 2008 U.S. Dist. LEXIS 101129, at *20 ("[Ultimately, consent is an issue that would have to be determined on an individual basis at trial."); <u>Gannon v. Network Tel. Servs., INc.</u>, No. 12-9777, 2013 U.S. Dist. LEXIS 81250, at *8-9 (C.D. Cal. Jun. 5, 2013)(Plaintiff has not established that common issues predominate over individualized issues. Determining Defendants' liability for the TCPA claim would require individual inquir[ies.]"); <u>Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.</u>, 274 F.R.D. 229, 237 (S.D. Ill. 2011)("determining who has consented or not consented to the Casino's calls will depend on individual examination of the

30

identity of the assignee for each number on the list at the time of each call.  In truth, a myriad of individual inquiries will be necessary to arrive at a decision on the issue of liability, which renders this case unmanageable as a class action."); Connelly v. Hilton Grand Vacations Co., 294 F.R.D. 574, 577 (S.D. Cal. Oct. 29, 2013)("Although TCPA cases are per se unsuitable for class resolution, class certification is warranted only when the unique facts of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary.")(internal citations omitted); Southwell v. Mortg. Investors Corp. of Ohio, No. 13-1289, 2014 U.S. Dist. LEXIS 112362, at *13 (W.D. Wash. Aug. 12, 2014)("the Court does not see how the issue of individualized consent will not reduce the trial on the merits to a series of individualized inquiries required to establish whether class members either provided consent to be called or made a request for information from Defendant that is tantamount to consent."; Conrad v. GMAC, 283 F.R.D. 326, 329 (N.D. Tex. 2012)("because th[e] individual issue [of consent] has the potential to separate classmembers from each other, the class lacks the cohesiveness necessary for the Court to certify a class under Rule 23(b)(2)."); Kenro, Inc. v. Fax Daily, Inc., 962 F. Supp. 1162, 1169-70 (S.D. Ind.

31

1997)(denying class certification because consent would have to be proven via individual inquires as to each class member).

### b. <u>Superiority</u>

The superiority requirement of Rule 23(b)(3) focuses "not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." <u>Klay</u>, 382 F.3d at 1269. "It is only when [management] difficulties make a class action less fair and efficient than some other method, such as individual interventions or consolidation of individual lawsuits, that a class action is improper." <u>Carnegie v. Mut. Sav. Life Ins. Co.</u>, No. 99-cv-3292, 2002 U.S. Dist. LEXIS 21396, at *76-77 (N.D. Ala. Nov. 1, 2002).

The Court has examined the factors enumerated in Rule 23(b)(3)(A)-(D), such as "the class members' interest in individually controlling the prosecution . . . of separate actions," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and manageability issues. After so doing, the Court determines that class wide resolution of the dispute is not superior to other methods of adjudication. This is especially so because the Court has already determined that Shamblin has

not satisfied the predominance prong of Rule 23(b)(3): "the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." Klay, 382 F.3d at 1269.

## IV.  Conclusion

Shamblin has not satisfied the commonality prong of Rule 23(a)(2) and has likewise failed satisfy at least one of the alternative requirements of Rule 23(b).  As a result, this Court denies Shamblin's Motion for Class Certification.  In addition, because the Motion for Class Certification has been denied, the Court denies as moot Shamblin's request for a "stay" of the applicable case management deadlines.

In the Motion to stay the applicable deadlines, Shamblin indicates that "certification and class membership determine not only the stakes involved, but also the scope and timing of discovery and motion practice, the structure of trial and methods of proof, and the length and cost of the litigation." (Doc. # 192 at 4)(internal citation omitted).  In denying the Motion for Class Certification, the Court has significantly narrowed the issues for trial and the Court determines that

it is not appropriate to stay any case management deadlines or to grant an open-ended extension of time as suggested in the Motion to Stay.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Shamblin's Motion for Class Certification (Doc. # 146) is **DENIED.**

(2)  Shamblin's Motion to Strike the Declaration of Jerry Samargia (Doc. # 177) is **DENIED.**

(3)  Shamblin's Motion to Stay Case Management Deadlines (Doc. # 192) is **DENIED AS MOOT.**

(4)  Defendants Obama for America, DNC Services Corporation, and New Partners Consulting, Inc.'s Joint Motion to Exclude Expert Reports and Testimony of Anya Verkhovskaya and Robert Biggerstaff (Doc. # 180) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of April, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

34